IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WYNTER WHITLEY and            :
CHRISTOPHER KITCHO,           :
                              :
    Plaintiffs,               :
                              :
v.                            :         CIVIL ACTION NO.
                              :         1:16-CV-03192-LMM
                              :
OFFICER M.L. HILL, OFFICER C.L. :
BROWN, and SERGEANT S. DEAN,  :
                              :
    Defendants.               :

## ORDER

This case comes before the Court on Defendants' Motion for Summary

Judgment [55] and Plaintiff Christopher Kitcho's Motion for Partial Summary

Judgment and/or Default Judgment and Spoliation Sanctions [58]. After due

consideration, and with the benefit of oral argument, the Court enters the

following Order.

## I.   BACKGROUND[1]

The case arises from an incident at Aroma Lounge in DeKalb County,

Georgia. On August 29, 2014, Defendants Hill, Brown, and Dean were working

off-duty as security guards at Aroma Lounge. Dkt. No. [64-13] ¶ 1–2. Each

Defendant was in a different location around the lounge. Id. That night, Plaintiffs

met with a friend of theirs, Keidronn Benton, in the parking lot outside Aroma

---

[1] The facts in this section are undisputed unless otherwise indicated.

Lounge before going inside. See Dkt. No. [57-4] at 3. Defendant Hill observed Plaintiffs and Mr. Benton walk through the parking lot toward Aroma Lounge. Dkt. No. [64-13] ¶¶ 3–6. Defendant Hill saw that Plaintiff Kitcho was holding a clear plastic cup, which he suspected contained an alcoholic beverage. Id. ¶¶ 3–4. He asked Plaintiff Kitcho to put the cup down. Id. ¶ 4. Plaintiff Kitcho put the cup down outside and then went into the lounge with Plaintiff Whitley and Mr. Benton. Id. ¶¶ 5–6. After they entered Aroma Lounge, Defendant Hill smelled the cup and noted that it indeed contained an alcoholic beverage, which Plaintiff Kitcho does not dispute. Id. ¶¶ 6–7.

Sometime later, Plaintiffs and Mr. Benton left Aroma Lounge. Id. ¶ 8; see Dkt. No. [57-4] at 3. At that time, Plaintiff Kitcho began to pick the cup back up on his way out. Dkt. Nos. [64-13] ¶ 8; [55-1] at 2; [64] at 3. Defendant Hill then warned Plaintiff Kitcho that if he took the cup, he would be cited for being in possession of an alcoholic beverage in public. Dkt. No. [64-13] ¶ 9. Defendant Hill and Plaintiff Kitcho then began arguing about whether such an offense applied because they were in a privately-owned parking lot. Id. ¶ 10. The parties dispute how this argument began. Plaintiffs contend that Plaintiff Kitcho put down the cup and tried to leave with Plaintiff Whitley and Mr. Benton, but that Defendant Hill followed them and confronted them. See id.; Dkt. No. [64] at 3. Defendant Hill asserts that Plaintiff Kitcho refused to put down the cup and started arguing with him about the legality of an open container citation. Dkt. No. [55-1] at 3.

In any event, the parties agree that an argument ensued. During the course of this argument, Plaintiff Kitcho's employment history came up. According to Defendants, Plaintiff Kitcho claimed he was an Atlanta police officer during this argument. Dkt. No. [55-1] at 3. Plaintiffs contend, however, that Plaintiff Kitcho identified himself as a *former* Atlanta police officer who had recently resigned and that Defendants asked him for proof of that contention. Dkt. No. [64] at 5. It is undisputed that Plaintiff Kitcho had resigned from the Atlanta Police Department before the events on August 29, 2014. Dkt. No. [64-13] ¶¶ 11–12. Plaintiff Kitcho presented Defendant Hill with an "aftermarket" badge, which is an unofficial badge that police officers carry when working extra jobs. Dkt. No. [64-13] ¶¶ 14–15. Plaintiff Kitcho also told Defendant Hill that he "knew the law." Id. ¶ 17.

As the argument continued, both Plaintiff Whitley and Mr. Benton got involved and other customers of Aroma Lounge began watching the encounter. See id. ¶¶ 16, 21, 23. The parties dispute the exact nature of Plaintiff Whitley's involvement. Defendants assert that Plaintiff Whitley got in Defendant Hill's face and cursed at him. Id. ¶ 18. Plaintiffs deny that Plaintiff Whitley ever used profanity and simply responded to Defendant Hill after he approached them from a distance of about five feet. Id. As to Mr. Benton, it is undisputed that he tried to get Plaintiff Kitcho to leave the premises. Id. ¶ 20. At some point, Mr. Benton put his arm in between Plaintiff Kitcho and Defendant Hill. Id. ¶ 21. Although it is

unclear if Mr. Benton's arm touched Defendant Hill, id. ¶ 22, Defendant Hill

swatted down Mr. Benton's arm. Dkt. Nos. [55-1] at 4; [64] at 4.

What happened next is hotly disputed. According to Defendants, after

Defendant Hill swatted Mr. Benton's arm, Plaintiff Whitley reacted violently and

slapped Defendant Hill's hand away from Mr. Benton. Dkt. No. [55-1] at 4.

Defendant Hill then arrested Plaintiff Whitley for simple battery, disorderly

conduct, and obstruction. Id. According to Plaintiffs, however, after swatting Mr.

Benton's arm, Defendant Hill unexpectedly tackled Plaintiff Whitley without

provocation. Dkt. No. [64] at 4. Plaintiffs contend that Plaintiff Whitley never

touched Defendant Hill but that he nevertheless took her to the ground and

slammed her on the patrol car before arresting her. Id.

As Defendant Hill placed Plaintiff Whitley under arrest and into his patrol

car, Defendants Brown and Dean arrived. Dkt. No. [55-1] at 4; [64] at 5.

Defendant Hill then took Plaintiff Whitley in his patrol car to the DeKalb County

Jail. Dkt. No. [55-1] at 4; [64] at 5. Defendants Brown and Dean repeatedly told

Plaintiff Kitcho to leave and that he was free to leave, but Plaintiff Kitcho stayed

and continued arguing with them. Dkt. No. [55-1] at 4–5; [64] at 5; see Dkt. No.

[58] Ex. A (video files). The parties dispute whether Plaintiff Kitcho then told

Defendants Brown and Dean that he was a current or former Atlanta Police

Officer, but they agree that Defendants Brown and Dean asked him for police

identification. Dkt. No. [55-1] at 5; [64] at 5. Plaintiff Kitcho showed Defendant

Dean his "aftermarket" badge. Dkt. No. [64-13] ¶ 25. Plaintiff Kitcho then called

his former supervisor, Lieutenant Rick Mason of the Atlanta Police Department, who spoke with Plaintiff Kitcho and Defendant Dean over the phone. Id. ¶ 26; Dkt. No. [58] Ex. A (video files).[2] Defendants Brown and Dean then arrested Plaintiff Kitcho for impersonating a police officer. Dkt. Nos. [55-1] at 6; [64] at 5–6; [64-11] (Arrest Records). After the arrest, Defendant Brown sought and obtained an arrest warrant for Plaintiff Kitcho. Dkt. No. [64-9] (Arrest Warrant). In his affidavit for the arrest warrant, Defendant Brown stated that Plaintiff Kitcho "falsely held himself out as a City of Atlanta Police Officer with the Intent to mislead another into believing that he/she is actually such an officer by brandishing an Atlanta badge and a city of Atlanta government identification card." Id. Plaintiff Kitcho was held in DeKalb County Jail until September 1, 2014. Dkt. No. [64-11]. Plaintiff Kitcho's prosecution for the alleged offense of impersonating a police officer was dismissed after the State determined that, "[b]ased on the evidence," it "would not be able to prove this case beyond a reasonable doubt." Dkt. No. [64-10] (Nolle Prosequi Order).

Based on these events, Plaintiffs filed this Section 1983 action against Defendants on August 29, 2016. Dkt. No. [1]. Plaintiff Whitley brings a false arrest claim against Defendant Hill for violation of her Fourth Amendment rights. Dkt. No. [43] at 7. Plaintiff Kitcho brings false arrest claims against Defendants Brown and Dean for violation of his Fourth Amendment rights. Id. at

---

[2] Defendants also assert that Plaintiff Kitcho showed them a fraudulent City of Atlanta identification card and badge. Dkt. No. [55-1] at 5. Plaintiffs deny this assertion. See Dkt. No. [64-13] ¶ 13.

8. Plaintiff Kitcho also brings malicious prosecution claims against Defendants Brown and Dean based on what he alleges were false statements in Defendant Brown's affidavit in support of the arrest warrant which stated that Plaintiff Kitcho brandished a City of Atlanta badge and identification card. Id. at 9–10. Defendants now move for summary judgment on all of Plaintiffs' claims. Dkt. No. [55].

Additionally, Plaintiff Kitcho has filed a Motion for Partial Summary Judgment and/or Default Judgment and Spoliation Sanctions related to the following undisputed facts. Dkt. No. [58]. Defendant Dean recorded a series of videos of his interactions with Plaintiff Kitcho on his personal cell phone using its standard video recording software. Dkt. No. [66] ¶¶ 4, 19. These videos varied in length and duration, and were not taken continuously. Id. ¶ 18. Defendant Dean did not share these videos with the prosecution involved at any time with Plaintiffs' criminal prosecutions, but instead first told his attorneys that the videos existed in this civil action. Id. ¶¶ 7–8. Defendant Dean sent the video files by email to Defendant Brown, who then forwarded them to DeKalb County attorneys. Id. ¶ 9. After learning about the videos through interrogatories, Plaintiffs asked Defendant Dean about the videos in a deposition. Id. ¶¶ 11–12. Defendant Dean responded he had misplaced the cell phone containing the videos and could not locate the email message in which he had shared the video files. Id. ¶¶ 12–13. After jointly inspecting Defendant Dean's cell phone, the parties suspected that additional video files existed that could be retrieved via

forensic analysis. Id. ¶ 14. The parties jointly retained Black Spear Investigations to conduct such an analysis, but the company's forensic analyst was unable to recover any additional files. Id. ¶¶ 15–16. Based on the way in which Defendant Dean's cell phone named video files, the parties agree that fourteen video files are missing. Id. ¶¶ 20–24. Seven video files remain in the record. See id.[3] The missing files are no longer on Defendant Dean's cell phone or his online iCloud system for backup files. Id. ¶ 25. Black Spear Investigations's forensic analyst concluded that these missing files were "manually" deleted from both Defendant Dean's phone and iCloud backup, but the parties dispute whether the deletion could have occurred accidentally or must have occurred intentionally. Id. ¶¶ 26–27. Specifically, Defendant Dean retained an expert who also conducted a forensic analysis. Dkt. No. [65-5]. This expert also determined that the missing files could not be recovered, but stated that they "could have been accidentally deleted in a number of different ways" from the cell phone. Id. ¶¶ 7–9, 14. Based on these facts, Plaintiff Kitcho has moved for partial summary judgment and/or default judgment or spoliation sanctions. Dkt. No. [58].

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[3] The forensic analyst jointly retained by the parties estimated that Defendant Dean recorded at least 35 minutes of video, Dkt. No. [58-13] ¶ 7, but only about 14 minutes of video remain in the record. See Dkt. Nos. [66] ¶¶ 20–24; [58] Ex. A (video files).

Civ. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden to show the Court, by reference to material in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson, 74 F.3d at 1090.

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elc. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. Id. (citations omitted). All reasonable

doubts, however, are resolved in the favor of the non-movant. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993).

## III.  DISCUSSION

As set out above, Plaintiffs bring their claims under Section 1983. Plaintiff Whitley brings a false arrest claim in violation of her Fourth Amendment rights against Defendant Hill. Plaintiff Kitcho brings a false arrest claim in violation of his Fourth Amendment rights against Defendants Brown and Dean. Plaintiff Kitcho also brings a malicious prosecution claim against Defendants Brown and Dean. Defendants have moved for summary judgment on all claims asserting qualified immunity.

Qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1193–94 (11th Cir. 2002) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). Because it is undisputed that Defendants were acting within the scope of their discretionary authority, the burden is on Plaintiffs to show Defendants are not entitled to qualified immunity. <u>See</u> <u>id.</u> The Supreme Court has established a two-part test for evaluating whether qualified immunity applies, either prong of which may be addressed first. <u>Pearson v. Callahan</u>, 555 U.S. 223, 226 (2009). First, the Court must determine whether under Plaintiffs' version of the facts, the officers' conduct violated a

constitutional right. <u>Lee</u>, 284 F.3d at 1193–94.[4] And second, the Court must determine whether the right was clearly established. <u>Id.</u> The Court will first consider each of Plaintiffs' false arrest claims and then turn to Plaintiff Kitcho's malicious prosecution claim.

### A.    False Arrest

The Fourth Amendment of the U.S. Constitution prohibits warrantless arrests without probable cause. <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1226 (11th Cir. 2004). Indeed, the Eleventh Circuit has clearly established that "an arrest made without probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures." <u>Skop v. City of Atlanta</u>, 485 F.3d 1130, 1143 (11th Cir. 2007). However, if an officer had probable cause for an arrest, then there is no constitutional violation. <u>Kingsland</u>, 382 F.3d at 1226. Probable cause for an arrest is based on the "totality of the circumstances." <u>Id.</u> It "exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had

---

[4] At oral argument, Defendants asked the Court to consider the credibility of their version of the facts—as compared to Plaintiffs' version of the facts—in order to allow the Court to consider only Defendants' version of the facts in ruling on summary judgment. Aside from the qualified immunity standard on summary judgment, which requires the Court to consider "the *plaintiff's* version of the facts," <u>Lee</u>, 284 F.3d at 1194 (emphasis in original), the Court also notes that as a general matter the Supreme Court has long held that "*[c]redibility determinations*, the weighing of evidence, and the drawing of legitimate inferences from the facts are *jury functions, not those of a judge*, whe[n] [s]he is ruling on a motion for summary judgment." <u>Anderson</u>, 477 U.S. at 255 (emphasis added).

committed or was committing a crime." Skop, 485 F.3d at 1137 (quotation omitted).

Further, for purposes of qualified immunity, the officer need only have had arguable probable cause. Id. Arguable probable cause asks "whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendant *could have believed* that probable cause existed to arrest." Id. (quotation omitted and alteration adopted). Whether an arresting officer had arguable probable cause depends on the elements of the alleged crime as well as the facts of the arrest. Id. Additionally, the validity of the arrest does not depend on the specific offense announced by the officer either orally or in a written arrest report. Lee, 284 F.3d at 1195–96. So long as "the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply." Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010); see also Lee, 284 F.3d at 1196 ("When an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." (quotation omitted and alteration adopted)).

### 1.   *Plaintiff Whitley*

Plaintiff Whitley was cited for simple battery, disorderly conduct, and obstruction. Defendant Hill asserts that he had arguable probable cause for all three of these offenses under Georgia law. The Court addresses each in turn.

a.   *Simple Battery*

Under Georgia law, a person commits the offense of simple battery when he or she "[i]ntentionally makes physical contact of an insulting or provoking nature with the person of another" or "[i]ntentionally causes physical harm to another." O.C.G.A. § 16-5-23(a). According to Defendant Hill, there is no dispute that Plaintiff Whitley struck him. Dkt. No. [55-1] at 12. However, that claim is quite simply not true. As Plaintiff Whitley points out, she as well as Plaintiff Kitcho and Mr. Benton all testified that Plaintiff Whitley never touched Defendant Hill. Dkt. No. [64] at 7–8. In reply, Defendant Hill states that other witnesses agreed with his account instead and therefore the Court should grant him summary judgment. But at summary judgment the moving party has an affirmative obligation to establish the absence of a genuine issue of material fact and thus show that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 248–49.

A reasonable jury might believe Defendant Hill and other witnesses' testimony that Plaintiff Whitley struck him. If so, then Defendant Hill certainly had arguable probable cause to arrest Plaintiff Whitley for simple battery. But a reasonable jury could also believe the testimony of Plaintiff Whitley, Plaintiff Kitcho, and Mr. Benton that Plaintiff Whitley never touched Defendant Hill. And if that is so, then Defendant Hill did not have arguable probable cause to arrest Plaintiff Whitley for simple battery—an offense concerning intentional physical contact. As a result, the Court finds that Defendant Hill is not entitled to qualified

immunity on the basis of the offense of simple battery at summary judgment

because questions of fact remain.

### b.    Disorderly Conduct

Under Georgia law, a person commits the offense of disorderly conduct

when he or she commits any one of the following four acts:

> (1) Acts in a violent or tumultuous manner toward another person whereby such person is placed in reasonable fear of the safety of such person's life, limb, or health;
> (2) Acts in a violent or tumultuous manner toward another person whereby the property of such person is placed in danger of being damaged or destroyed;
> (3) Without provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called "fighting words"; or
> (4) Without provocation, uses obscene and vulgar or profane language in the presence of or by telephone to a person under the age of 14 years which threatens an immediate breach of the peace.

O.C.G.A. § 16-11-39(a). Defendant Hill asserts that Plaintiff Whitley's conduct

violated either subsection (1) or (3) of this statute. Dkt. No. [69] at 6 n.1.

According to Defendant Hill, he had arguable probable cause to arrest

Plaintiff Whitley for this offense because her loud and aggressive behavior drew

onlookers that caused a scene in the Aroma Lounge parking lot, and she cursed

and insulted Defendant Hill in an attempt to incite other to intervene—namely,

Plaintiff Kitcho and Mr. Benton. Dkt. No. [55-1] at 12–13. But as Defendant Hill

concedes in his reply brief, Plaintiff Whitley denies ever cursing, getting close to

Defendant Hill, or refusing to leave the parking lot of Aroma Lounge. Dkt. No.

[69]. Just because this is "self-serving testimony," id at 6, does not entitle Defendant Hill to summary judgment. See Anderson, 477 U.S. at 249 ("[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Indeed, the Eleventh Circuit has repeatedly cautioned that "even if a party's statements are self-serving, that alone does not permit us to disregard them at the summary judgment stage." Liebman v. Metro. Life Ins. Co., 808 F.3d 1294, 1299 (11th Cir. 2015) (quotation omitted and alteration adopted); see also Price v. Time, Inc., 416 F.3d 1327, 1345 (11th Cir. 2005) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). Because the material facts as to whether Plaintiff Whitley acted in any disorderly manner are in dispute, the Court finds that Defendant Hill is not entitled to qualified immunity on the basis of the offense of disorderly conduct at summary judgment.

c.    *Obstruction*

Under Georgia law, "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties" has committed the offense of obstruction. O.C.G.A. § 16-10-24(a). Defendant Hill argues that he had arguable probable cause to arrest Plaintiff Whitley for this offense because she struck him, caused a public disturbance, created a hostile environment, and resisted arrest. Dkt. No. [69] at 7. However, as set out above in the Court's analysis on simple battery and disorderly conduct,

it is disputed as to whether Plaintiff Whitley struck Officer Hill and caused or created any sort of public disturbance or hostile environment.

As to Defendant Hill's contention that Plaintiff Whitley resisted arrest, that argument misses the mark. Defendant Hill's arguable probable cause to arrest Plaintiff Whitley cannot have come from the act of arresting her itself. He was required to have arguable probable cause for an offense *before* arresting Plaintiff Whitley. See, e.g., Grider, 618 F.3d at 1257 (holding that arguable probable cause must have existed in order to arrest someone). And further, assuming Plaintiff Whitley's account of the facts are true that she did not strike Defendant Hill or cause any disturbance or hostile environment, Defendant Hill did not have any basis upon which to arrest Plaintiff Whitley. Under Georgia law, when an arrest is not lawful, the person being arrested "has the right to resist, and in doing so has a right to resist with force proportionate to that being used in unlawfully detaining him." Mullis v. State, 27 S.E.2d 91, 98 (Ga. 1943). As the Eleventh Circuit has recognized, if an officer does "not have probable cause to arrest," then the contention that resisting arrest gave an officer arguable probable cause to arrest for obstruction under Georgia law "adds nothing to [that officer's] defense because it is dependent upon the validity, or arguable validity of the arrest." Merenda v. Tabor, 506 F. App'x 862, 867 (11th Cir. 2013) (per curiam). In other words, resisting an arrest for which Defendant Hill did not have arguable probable cause for cannot independently provide Defendant Hill with a basis for

summary judgment.[5] Accordingly, the Court finds that Defendant Hill is the Court finds that Defendant Hill is not entitled to qualified immunity at summary judgment for Plaintiff Whitley's claims.

### 2.    *Plaintiff Kitcho*

Plaintiff Kitcho was arrested for impersonating a police officer.[6] Under Georgia law, a person commits this offense if he "falsely holds himself out as a peace officer or other public officer or employee with intent to mislead another into believing that he is actually such officer." O.C.G.A. § 16-10-23.

The Court finds that genuine issues of material fact preclude summary judgment on this claim. Although Defendants claim that Plaintiff Kitcho "blatantly lied about being a police officer," Dkt. No. [55-1] at 14, Plaintiff Kitcho hotly disputes that contention. According to Plaintiff Kitcho, he said only that he was a *former* police officer. Dkt. No. [64] at 16. And taking Plaintiff Kitcho's facts as true, as the Court must on summary judgment, the other evidence that Defendants point to—including Plaintiff Kitcho's statement that he "knew the

---

[5] In any event, although neither party addressed the issue in their briefing, it is not clear to the Court that Defendant Hill was acting "in the lawful discharge of his or her *official duties*"—an essential element of the Georgia obstruction offense—during his off-duty employment as a security guard for Aroma Lounge. O.C.G.A. § 16-10-24(a) (emphasis added).

[6] At oral argument, Defendants expressly stated to the Court that they were not pursuing any defense based on arguable probable cause for an alcohol-related (or any other) offense as to Plaintiff Kitcho. Neither does Defendants' briefing contain any argument that Defendants had arguable probable cause to arrest Plaintiff Kitcho for any offense other than impersonating an officer. As a result, the Court's analysis considers only this offense.

law" and his possession of an "aftermarket" badge—is consistent with Plaintiff Kitcho's claim that the Defendants in this case asked him to prove his statement that he used to be a police officer. See Dkt. Nos. [55-1] at 14–19; [64] at 16–18.[7] Based on the facts as Plaintiff Kitcho presents them, the Court finds that Defendants Brown and Dean are not entitled to qualified immunity at summary judgment on the basis of arguable probable cause to arrest Plaintiff Kitcho for impersonating a police officer.

### B.   Malicious Prosecution

Plaintiff Kitcho also brings a claim for malicious prosecution against Defendants Brown and Dean. The Eleventh Circuit has held that malicious prosecution is "a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). It explained that "the federal right to be free from malicious prosecution is actually a description of the right to be free from an unlawful seizure which is part of a prosecution." Id. at 881 n.15 (quotation omitted). To establish such a claim, Plaintiff Kitcho must prove (1) a violation of his Fourth Amendment right to be free from unreasonable seizures as well as (2) the elements of the common

---

[7] Defendants also argue that Plaintiff Kitcho's conversation and text messages with his former supervisor, Lieutenant Mason, provide a basis for Defendants' arguable probable cause to arrest Plaintiff Kitcho. Dkt. No. [55-1] at 16–17. While this evidence might be relevant at trial to challenge the veracity of Plaintiff Kitcho's testimony, it is not relevant to the Court's qualified immunity analysis of arguable probable cause on summary judgment. That's because the Court can consider only what Defendants knew "*at the time of arrest.*" Brown v. City of Hunstville, 608 F.3d 724, 734 (11th Cir. 2010). There is no evidence in the record indicating that Defendants were aware of the content of Plaintiff Kitcho's conversation or text messages with Lt. Mason at the time of arrest.

law tort of malicious prosecution. Kingsland, 382 F.3d at 1234. Under Georgia law, those common law elements are: "(1) a criminal prosecution instituted or continued by present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Wood, 323 F.3d at 882. The Court addresses each element in turn.

The threshold requirement for bringing a malicious prosecution claim under Section 1983 is that there must have been a violation of Plaintiff Kitcho's Fourth Amendment right to be free from unreasonable seizures. Kingsland, 382 F.3d at 1234. But for purposes of Section 1983, "unlike the torts of false arrest and false imprisonment, the tort of malicious prosecution requires a seizure pursuant to legal process." Black v. Wigington, 811 F.3d 1259, 1267 (11th Cir. 2016). "Legal process includes an arrest warrant." Id. The officer who applies for that arrest warrant "can be liable for malicious prosecution if he should have known that his application failed to establish probable cause or if he made statements or omissions in his application that were material and perjurious or recklessly false." Id. (quotations and citations omitted). If the arrest warrant was supported by probable cause, however, then the police officer cannot be liable for malicious prosecution. Id.

The problem for Plaintiff Kitcho is that his case involves a warrantless arrest. The arrest warrant on which Plaintiff Kitcho relies (and that he contends contained material false statements) was sought and obtained only after he had

been arrested and detained. <u>See</u> Dkt. No. [64-9] (Arrest Warrant). The Eleventh Circuit has held that "[i]n the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted." <u>Kingsland</u>, 382 F.3d at 1235. Consequently, a warrantless arrest "cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment and was not one that arose from malicious prosecution as opposed to false arrest." <u>Id.</u>

Plaintiff Kitcho argues that he "was seized pursuant to [Defendant Brown's] warrant." Dkt. No. [64] at 20. But that is undisputedly not the case. Plaintiff Kitcho was seized pursuant to a warrantless arrest for which the parties dispute whether or not Defendants had arguable probable cause to effect. Although after Plaintiff Kitcho was seized and in DeKalb County Jail, Defendant Brown sought and obtained an arrest warrant, that legal process comes too late to serve as the basis for the predicate deprivation of liberty for a malicious prosecution claim. Because Plaintiff Kitcho was seized pursuant to a warrantless arrest, "the judicial proceeding does not begin until the party is arraigned or indicted." <u>Kingsland</u>, 382 F.3d at 1235. In a warrantless arrest case, Plaintiff Kitcho's false arrest claim covers his alleged damages "from the moment of arrest to the time of arraignment," whereas a malicious prosecution claim properly "implicate[s] post-arraignment deprivations of liberty." <u>Love v. Oliver</u>, 450 F. Supp. 2d 1336, 1341 n.4 (N.D. Ga. 2006); <u>see also</u> <u>Benson v. Facemyer</u>, No. 1:13-CV-595-WSD, 2017 WL 1361292, at *2 (N.D. Ga. Apr. 14, 2017) (finding that an "arresting officers['] affidavit for use at a state-court magistrate judge hearing to

determine the existence of probable cause" after a warrantless arrest did not convert a false arrest claim into a malicious prosecution claim).  Because Plaintiff Kitcho does not assert that there was any sort of issue with his arraignment or indictment, the Court finds that Defendants Brown and Dean are entitled to summary judgment on Plaintiff Kitcho's malicious prosecution claims.

## IV.   SPOLIATION MOTION

Based on the undisputed facts relating to the missing video files from Defendant Dean's personal cell phone, Plaintiff Kitcho has filed a Motion for Partial Summary Judgment and/or Default Judgment and Spoliation Sanctions [58]. Under Federal Rule of Civil Procedure 37(e), "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the Court may issue a variety of possible sanctions upon finding prejudice or "that the party acted with the intent to deprive another party of the information's use in litigation." Fed. R. Civ. P. 37(e).

Defendant Dean does not dispute that he had an obligation to preserve the video evidence, failed to take reasonable steps to preserve the evidence, or that the video evidence could be restored or replaced through additional discovery. See Dkt. Nos. [58-1] at 11–13 (providing a number of bases upon which Defendant Dean had an obligation to preserve); [65] at 7–11. Instead, Defendant

Dean argues that Plaintiff Kitcho cannot show prejudice or that he acted intentionally. The Court addresses each in turn.

### A.    Prejudice

Defendant Dean argues that Plaintiff Kitcho cannot show prejudice because he has failed to show "evidence [that] any lost video could have been crucial to proving his claim." Dkt. No. [65]. That is true, but only because the videos are missing. The Eleventh Circuit has held that where a party did not have an opportunity to examine crucial evidence, there is clear prejudice. See Flury v. Daimler Chrysler Corp., 427 F.3d 939, 945–56 (11th Cir. 2005). And in this case, both Defendants Brown and Dean stated in their depositions that the video showed Plaintiff Kitcho identifying himself as a current police officer. Specifically, Defendant Dean testified that "the video would show Mr. Kitcho identifying himself as a current police officer." Dkt. No. [58-5] at 3. Defendant Brown testified that "if we had this video . . . we wouldn't have to be sitting and talking about what he said or didn't say because it would be right there for everyone to see." Dkt. No. [58-6] at 2. Based on Defendants Brown and Dean's testimony, the missing videos would resolve the crucial issue in this case. Plaintiff Kitcho either said he was a current or former police officer, and that fact alone— one way or the other—is dispositive to the question of whether Defendants had arguable probable cause to arrest him for impersonating a police officer under Georgia law. Because this evidence is so central to Plaintiff Kitcho's claim, the Court finds that the missing videos are prejudicial to Plaintiff Kitcho. See Connor

v. SunTrust Bank, 546 F. Supp. 2d 1360, 1376 (N.D. Ga. 2008) (finding prejudice where "relevant evidence is not produced, for whatever reason, and then is destroyed . . . [because] the absence of the relevant evidence prejudices the party that would have relied on it to prove its case"); see also Graff v. Baja Marine Corp., 310 F. App'x 298, 302 (11th Cir. 2009) (holding that spoliation of "*the* critical piece of evidence*" amounted to "significant prejudice").

### B.   Intent

Defendant Dean next argues that Plaintiff Kitcho cannot show he acted with intent. Dkt. No. [65] at 11. He points out that he has cooperated in discovery and handed over his cell phone for forensic analysis. See id. at 11–13. Defendant Dean also denies having intentionally deleted any videos. Id. at 13.

However, based on the record, the Court finds that Defendant Dean intentionally deleted the missing video files. The undisputed facts show that after recording interactions with Plaintiff Kitcho, Defendant Dean never shared any of the videos during the criminal prosecutions of either Plaintiff Whitley or Kitcho. Dkt. No. [66] ¶ 7. After this lawsuit was filed, Defendant Dean was still in possession of all of the video files. Id. ¶ 8. His attorneys requested the videos, but instead of sending them the files, he sent the videos to Defendant Brown. Id. ¶¶ 8–9. Defendant Dean did not disclose that he had the videos in his initial disclosures, but only after he was later served with interrogatories. Id. ¶¶ 10–11. When asked about the videos in his deposition, Defendant Dean stated that he could not provide the videos because he had misplaced his cell phone. Id. ¶ 12. He

also stated that he could not locate the emails containing the video files he had sent to Defendant Brown. Id. ¶ 14. Later, Defendant Dean's cell phone was found but was missing most of the video files. See id. ¶¶ 24–25. The same missing files were also not available on his online iCloud backup account. Id. ¶ 25.

The parties *jointly* retained an independent forensic analyst in an effort to try to recover the missing files. Dkt. No. [66] ¶¶ 14–15.[8] The forensic analyst was not able to recover the missing files. Id. ¶ 16. Additionally, the parties do not dispute that the files were "manually" deleted. Id. ¶ 27. In his affidavit, the analyst pointed out that Defendant Dean's cell phone does not automatically delete any video files even where storage space is full and any such file must be deleted manually. Dkt. No. [58-13] ¶¶ 13–14. The analyst also noted that Defendant Dean's cell phone was connected to an online backup iCloud account, which automatically stored copies of all video files separately from the phone. Id. ¶ 15. The files were also manually deleted from Defendant Dean's iCloud account online. Id. ¶¶ 16–17. Based on this evidence, the independent analyst concluded that "someone manually deleted the video files of Sgt. Dean's interactions with Mr. Kitcho from the evening of August 24, 2014, from *both* Sgt. Dean's iPhone and iCloud account." Id. ¶ 18 (emphasis added). Further, Defendant Dean

---

[8] In the response brief to Plaintiff Kitcho's Motion, Defendant Dean's counsel complains that they were not able to depose the forensic investigator and ask that the Court defer consideration of the Motion for 60 days in order to allow such a deposition. Dkt. No. [65] at 4, 14. But as Defendant Dean conceded in the response to Plaintiff's Statement of Undisputed Material Facts, the forensic analyst was jointly retained by the parties. Dkt. No. [66] ¶ 15. Accordingly, nothing prevented Defendant's counsel from interviewing the forensic analyst.

indicated in his deposition that at least, at some point, all of the video files were available on his online iCloud account. See Dkt. No. [58-5] at 5, 7, 11 (testifying that the videos he emailed to Defendant Brown were sent from his iCloud account).

The Court finds this evidence convincing—particularly because despite having all of the video files when this lawsuit was filed, Defendant Dean did not disclose the video files without multiple follow-ups by Plaintiffs' counsel (and when he did, the crucial files were missing) and the fact that after the lawsuit was filed, manual deletions occurred on both the physical iPhone and the online iCloud backup system. The Court is sympathetic to Defendant Dean's contention that he is not a tech-savvy person. Dkt. No. [65] at 13. Many people are not and mistakes can be made. However, an independent analyst jointly retained by the parties concluded that Defendant Dean manually deleted the crucial video files from not one but two different sources.[9] While it might be plausible that an accidental deletion could occur on someone's phone, Defendant Dean has not provided the Court with a credible explanation for why these files are also missing from an online backup service that required Defendant Dean to go online and manually select to delete these files a second time. The Court also finds it persuasive that Defendant Dean did not provide Plaintiffs with the video files—

---

[9] In this regard, the affidavit filed by Defendant Dean's expert is not persuasive. See Dkt. No. [65-5]. Even accepting the expert's statement that Defendant Dean could have accidentally permanently deleted the video files from his phone, the expert's affidavit offers no basis for which accidental deletion could have also occurred on the iCloud system. See id. ¶ 14.

despite having them when this lawsuit was filed—without multiple follow-ups; did not provide his attorneys with the video files; initially stated that he had misplaced the evidence; and only then provided some of the video files, lacking those that contained the moments crucial to this case.

On this record, the Court finds that Defendant Dean lost electronic evidence that should have been preserved that cannot be restored or replaced and is prejudicial to Plaintiff Kitcho. The Court also finds that Defendant Dean acted with the intent to deprive Plaintiff Kitcho of the information's use in litigation. Accordingly, Plaintiff's Motion [58] is granted.

### C.    Sanction

Having granted Plaintiff Kitcho's Motion, however, the Court is frankly unsure of how to craft an appropriate sanction for the Rule 37(e) violation at issue. For instance, Plaintiff Kitcho asks for an entry of default judgment against Defendant Dean. Dkt. No. [58-1] at 22. The Court foresees a number of issues with this proposed sanction, both practical and legal as it relates to possible prejudice to co-defendants.

First, an entry of default judgment—or even a jury instruction—against Defendant Dean would seem to raise issues of prejudice with regard to Defendant Brown. The Court is not sure how it could be feasibly presented to the jury that Defendant Dean falsely arrested Plaintiff Kitcho because he held himself out as a former police officer, but that Defendant Brown may have legally arrested Plaintiff Kitcho for impersonating a police officer based on the evidence.

Second, there are other issues because this case concerns qualified immunity. If at trial, the jury were to find that Plaintiff Kitcho held himself out as a current police officer to either (1) Defendant Hill before Defendants Brown or Dean arrived or (2) Defendant Brown, then a judgment against Defendant Dean could not stand. Under what is sometimes called the collective-knowledge doctrine or fellow-officer rule, in a Section 1983 false arrest case, one officer's "knowledge is imputed to the other officers." Valderrama v. Rousseau, 780 F.3d 1108, 1115 (11th Cir. 2015) (citing Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997) (en banc) ("Probable cause to arrest exists when the facts and circumstances within the collective knowledge of law enforcement officers . . . would cause a reasonably prudent person to believe that the suspect has committed or is committing an offense."). In other words, if the jury were to make a finding that Plaintiff Kitcho held himself out as a current police officer to either Defendant Hill or Brown, then Defendant Dean would also be entitled to qualified immunity. And, of course, qualified immunity is an absolute bar to liability. See Lee, 284 F.3d at 1193–94.

Before issuing a sanction, the Court requires further briefing from the parties as to what sanction would be most appropriate. The parties are not to reargue whether sanctionable conduct occurred because the Court has already decided that issue. Accordingly, the parties are directed to submit supplemental briefing on the issues the Court has raised as well as any other possible issues they may anticipate with regard to a Rule 37(e) sanction.

26

## V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS IN PART AND DEINES IN PART** Defendants' Motion for Summary Judgment [55]. Specifically, the Court **GRANTS** Defendants' Motion with regard to Plaintiff Kitcho's malicious prosecution claims against Defendants Brown and Dean. The Court **DENIES** Defendants' Motion as to both Plaintiff Whitley and Kitcho's false arrest claims against Defendants Hill, Brown, and Dean. Additionally, the Court **GRANTS IN PART** Plaintiff Christopher Kitcho's Motion for Partial Summary Judgment and/or Default Judgment and Spoliation Sanctions [58]. As set out above, the parties are **DIRECTED** to complete briefing on the appropriate sanction for Defendant Dean. Each party shall submit briefing on the issues raised by the Court **within ten (10) days** of the entry of this Order. Each party shall thereafter have an **additional five (5) days** to file a response to the opposing party's submission. The Clerk is instructed to resubmit this to the undersigned in 15 days.

**IT IS SO ORDERED** this 2nd day of February, 2018.

LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE