IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WYNTER WHITLEY and                    :
CHRISTOPHER KITCHO,                    :
                                       :
        Plaintiffs,                    :
                                       :
                                       :
v.                                     :        CIVIL ACTION NO.
                                       :        1:16-CV-03192-LMM
                                       :
OFFICER M.L. HILL, OFFICER C.L.        :
BROWN, and SERGEANT S. DEAN,           :
                                       :
        Defendants.                    :

## ORDER

This case comes before the Court on Plaintiff Christopher Kitcho's Motion

for Partial Summary Judgment and/or Default Judgment and Spoliation

Sanctions [58]. The Court held a hearing regarding this Motion as well as

Defendants' Motion for Summary Judgment [55] on January 31, 2018. After

carefully considering the evidence and arguments presented in both the parties'

briefing and at oral argument, the Court issued an Order on February 2, 2018.

Dkt. No. [74]. The Court granted in part and denied in part Defendants' Motion

and granted in part Plaintiff Kitcho's Motion. However, the Court directed the

parties to file additional briefing as to the appropriate sanction for Defendant

Dean's spoliation. Specifically, the Court asked the parties to consider the impact

of any sanction on Defendants who should not be prejudiced by Defendant

Dean's actions as well as the complications that the defense of qualified immunity

might cause (particularly with regard to the collective-knowledge doctrine or fellow-officer rule). See id. at 25–26. The parties submitted that briefing, as well as responses to each other's briefs. See Dkt. Nos. [75–78]. After due consideration, the Court enters the following Order.

I.     **BACKGROUND**

For the reasons fully set forth in the Court's previous Order, the Court found that Defendant Dean intentionally deleted video evidence that prejudiced Plaintiff Kitcho. See Dkt. No. [74]. According to Defendant Brown and Dean's own testimony, the deleted videos showed whether Plaintiff Kitcho held himself out as a current or former police officer to them, which is a central disputed issue in this case. The parties' jointly retained independent forensic analyst concluded that these videos were manually deleted from both Defendant Dean's iPhone and his online iCloud backup. Defendant Dean lacked any plausible explanation for twice deleting the files and also admitted to a history of repeated failures to provide Plaintiffs (and his own counsel) with the video files during Plaintiffs' criminal prosecutions and after this lawsuit was filed. Defendant Dean also initially stated that he had misplaced the evidence, and when he finally did provide some of the video files, all of the videos that contained the moments crucial to this case were missing. On this record, the Court found that Defendant Dean failed to preserve crucial evidence that could not be replaced through additional discovery; that the missing evidence prejudiced Plaintiff Kitcho; and

that Defendant Dean deleted the videos with intent to deprive Plaintiff Kitcho of the information's use in litigation. Id.

## II.   LEGAL STANDARD

The Court has "a considerable amount of discretion in imposing sanctions." Flury v. Daimler Chrysler Corp., 427 F.3d 939, 943 (11th Cir. 2005). The power to impose sanctions "derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." Id. Whether under the Eleventh Circuit's spoliation precedent or Federal Rule of Civil Procedure 37(e), where (as here) the Court has found that the party seeking sanctions was prejudiced, that prejudice could not be cured by additional discovery, and the spoliating party acted intentionally to deprive the opposing party of the evidence's use in litigation, possible sanctions include a rebuttable presumption that the lost evidence was unfavorable to the spoliating party, a jury instruction, the exclusion of certain evidence, and default judgment. ML Healthcare Servs., LLC v. Publix Super Markets, Inc., ____ F.3d ____, No. 15-13851, 2018 WL 747392, at *9–11 (11th Cir. Feb. 7, 2018). Additionally, the Court may impose the sanction of attorneys' fees and costs under its inherent powers to sanction where it has found bad faith or intent. See Carter v. Butts Cty., No. 5:12-CV-209-LJA, 2016 WL 1274557, at *11 (M.D. Ga. Mar. 31, 2016); Abdulahi v. Wal-Mart Stores East, L.P., 76 F. Supp. 3d 1393, 1398 (N.D. Ga. 2014). However, any award of fees and costs should be directly related to the spoliation motion and attributable to the spoliating party's misconduct. Carter, 2016 WL 1274557,

at *11; see also Swofford v. Eslinger, 671 F. Supp. 2d 1274, 1287 (M.D. Fla. 2009) ("[T]he amount of fees and costs awarded may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of the sanctionable conduct." (quotation omitted and alteration adopted)).

## III.   DISCUSSION

### A.   Default Judgment

Plaintiff Kitcho asks the Court to enter a default judgment against Defendant Dean. Dkt. No. [75] at 2. Defendant Dean asks the Court to instead consider other sanctions including the preclusion of certain arguments and evidence, a jury instruction short of an adverse inference instruction, or a jury instruction stating that there is a rebuttable presumption that the deleted videos contained important evidence. Dkt. No. [76] at 4–7.

The Eleventh Circuit has held that an outright entry of default judgment "represents the most severe sanction available to a federal court, and therefore should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." Flury, 427 F.3d at 944. The Court finds that, in light of all the circumstances in this case, because the deleted videos were dispositive to the issue of whether Plaintiff Kitcho held himself out as a current or former police officer to Defendant Dean, an adverse finding as to Defendant Dean is warranted on this disputed factual issue. However, because of the other issues in this case as explained below, a more nuanced approach than an outright default judgment is necessary in this case.

In crafting a sanction, the Court is mindful of three particular issues. First, the deleted videos would have been dispositive to the particular issue of whether Plaintiff Kitcho held himself out to Defendant Dean as a current or former police officer. For that reason, the Court finds that, for purposes of only Defendant Dean, it is appropriate to impose an adverse finding that Plaintiff Kitcho did not hold himself out to Defendant Dean as a current police officer. That issue—again, only with regard to Defendant Dean—should not be litigated at trial. Second, Defendants Hill and Brown should not be in any way prejudiced by Defendant Dean's actions. Thus, the Court finds that the claims against Defendant Hill and Brown should be tried separately from those against Defendant Dean. Third, the Court acknowledges that an outright entry of default judgment against Defendant Dean would not be appropriate due to the possibility of qualified immunity on the basis of Plaintiff Kitcho's alleged statement to Defendant Hill. That is, Defendant Hill contends that Plaintiff Kitcho told him he was a police officer before Defendants Dean and Brown arrived. Under the collective-knowledge doctrine or fellow-officer rule, if the jury were to find that Plaintiff Kitcho indeed made such a representation to Defendant Hill, then Defendant Hill's knowledge would be imputed to Defendant Dean and he would thus be entitled to qualified immunity. See Valderrama v. Rousseau, 780 F.3d 1108, 1115 (11th Cir. 2015). Because this basis for qualified immunity is wholly separate from Defendant Dean's spoliation, the Court finds that it would not be appropriate to enter an outright default judgment in favor of Defendant Dean. Instead, a jury should first

have the opportunity to resolve through special interrogatories the factual issue of whether Plaintiff Kitcho held himself out as a current police officer to Defendant Hill. See Simmons v. Bradshaw, 879 F.3d 1157, 1164–65 (11th Cir. 2018) (explaining the process by which district courts should use special jury interrogatories to resolve genuine issues of fact that are determinative of the legal question of qualified immunity).

Based on these considerations, the Court finds that this case should proceed as follows. First, the Court will hold a trial as to Plaintiffs' claims against Defendants Hill and Brown. Neither Defendant Dean's spoliation nor the videos that Defendant Dean did provide will be referenced at this trial. The Court will submit to the jury special interrogatories concerning the historical facts relevant to Defendant Hill and Brown's qualified immunity defenses. See id. Second, based on the jury's factual findings, the Court will determine whether Defendant Dean is entitled to qualified immunity based on what the jury finds Plaintiff Kitcho said to Defendant Hill. If the Court finds that Defendant Dean is not entitled to qualified immunity, at that time, a default judgment will be entered against Defendant Dean. The Court will then hold a damages trial as to Plaintiff Kitcho's claims against Defendants Dean and Brown. Because Plaintiff Kitcho's false arrest claim is against both Defendants Dean and Brown, the Court cannot sever the compensatory damages determinations between the two Defendants. That's because the Eleventh Circuit has held that for Section 1983 Fourth Amendment claims (including false arrest), defendants are joint and severally

liable for compensatory damages. See Finch v. City of Vernon, 877 F.2d 1497, 1503 (11th Cir. 1989); see also Wright v. Watson, No. 4:15-CV-34, 2017 WL 4126981, at *1–3 (M.D. Ga. Sept. 18, 2017) (explaining the Eleventh Circuit's holding and why, in any event, "Georgia's apportionment statute is not consistent with the policy goals of § 1983"). If this second trial is necessary,[1] the Court will allow evidence to be presented regarding the issue of spoliation because it is relevant to any punitive damages that Plaintiff Kitcho may seek from Defendant Dean, but will instruct the jury not to consider such evidence in its compensatory damages finding nor in considering any punitive damages against Defendant Brown.[2]

As set out above, Plaintiff Kitcho's request for an outright entry of default judgment is not warranted due to the qualified immunity issue concerning Defendant Hill. However, Defendant Dean's requests for lesser sanctions such as a rebuttable jury instruction are not sufficient. Because the Court has already found that Defendant Dean intentionally twice-deleted the videos of the moments dispositive to his contentions that Plaintiff Kitcho represented himself as a current police officer, this issue should not be relitigated as Defendant Dean

---

[1] The Court would be open to the parties conferring and reaching some agreement as to how damages could be determined in the first trial.

[2] The Court reiterates, however, that Defendants are *not* to reargue whether sanctionable conduct occurred or whether it occurred intentionally because the Court has already decided both those issues. Cf. Dkt. Nos. [76] at 4 n.1; [78] at 3 n.1 (reasserting Defendant Dean's contention that no videos were intentionally deleted despite the Court's specific instruction not to do so).

proposes. In any event, the Court finds that it would not be possible to try the claims against Defendant Dean at the same time as the claims against the other Defendants without prejudicing their cases. As a result, the Court has crafted the aforementioned sanction which affords Defendant Dean the opportunity to be granted qualified immunity based on Plaintiff Kitcho's interactions with Defendant Hill—which were unrelated to the spoliation—but does not revisit the Court's adverse finding against Defendant Dean with regard to the deleted video evidence.

## B.    Attorneys' Fees

Plaintiff Kitcho's counsel also asks for attorneys' fees and costs related to their Motion. Dkt. No. [75] at 10. As they point out, see id. at 11 n.1 (collecting cases), many courts award attorneys' fees and costs upon a successful motion for spoliation as a matter of course. See, e.g., Carter, 2016 WL 1274557, at *11; Abdulahi, 76 F. Supp. 3d at 1398. The Court finds that an award of attorneys' fees and costs directly related to the spoliation motion and attributable to Defendant Dean's misconduct is warranted in this case. See Carter, 2016 WL 1274557, at *11; Swofford, 671 F. Supp. 2d at 1287. An award of such fees and costs is appropriate because but for Defendant Dean's misconduct, several depositions, a forensic analysis, and this Motion would not have been necessary.

In determining a reasonable award of attorneys' fees, the Court first calculates the "lodestar" amount—that is, the number of hours reasonably expended on the litigation time a reasonable hourly rate. Am. Civil Liberties

Union of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). "The fee applicant bears the burden of . . . documenting the appropriate hours and hourly rates" and should "supply[] the court with specific and detailed evidence." Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988). A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Id. at 1299. Courts are themselves experts on the question of whether hourly fees or time expended are reasonable and "may consider its own knowledge and experience [to] form an independent judgment" in making an award. Id. at 1303 (quotation omitted).

Plaintiffs have provided the Court with affidavits and exhibits setting out their time entries in detail. See Dkt. Nos. [75-1; 75-2; 77-1; 77-2]. Mr. Filipovits, the senior counsel on the matter, submitted a request for 52 hours of work at a rate of $400 per hour, for a total of $20,800 in fees. Dkt. Nos. [75-1; 77-1]. Mr. Greenamyre, a second-year associate, submitted a request for 96.8 hours of work at a rate of $350 per hour, for a total of $33,880 in fees. Dkt. Nos. [75-2; 77-2]. He also requests $1,275 for 8.5 hours of work by his paralegal (who bills at $150 per hour) and $779.11 in costs for $29.11 in courier fees and $750 spent on the independent forensic analysis. Id. Altogether, Plaintiff's counsel asks for $56,734.11 in attorneys' fees and costs related to this Motion.

Defendant Dean raises two objections to these requested fees. First, he argues that the rates charged are excessive. Dkt. No. [78] at 12. Second, he argues

that several of Plaintiffs' counsels' bills lack appropriate billing judgment. Id. at 15. Specifically, he points out that the time charged for certain tasks seems excessive; many tasks such as preparing transcripts or mailing things should have been done by a staff member or charged at a lower rate; and any fee request regarding settlement is beyond the scope of the spoliation issue. See id. at 15–16.

The Court agrees with many of Defendant's objections and finds the following adjustments should be made to each attorney's requested fees and costs. As to Mr. Filipovits, the Court finds that his rate of $400 per hour is a reasonable rate in the Atlanta market for senior counsel on a matter with nine years of experience. However, the Court also finds that many of Mr. Filipovits's time entries are not appropriate given his experience and hourly rate. For instance, Mr. Filipovits billed 2.2 hours for "preparing and filing deposition transcripts in support of sanction motion." Dkt. No. [75-1] at 11. In the Court's experience, tasks like these that do not require any formal legal training should be performed by a paralegal, not the senior counsel on a matter billing $400 per hour. Additionally, some of Mr. Filipovits's entries are for settlement discussions, which are outside the scope of the spoliation motion. Further, many of Mr. Filipovits's time entries seem entirely duplicative of Mr. Greenamyre's work. Compare, e.g., Dkt. No. [75-1] (Decl. of Jeff Filipovits) (billing 11.8 hours for legal research and editing related to motion briefing), with Dkt. No. [77-1] (Decl. of Zack Greenamyre) (billing 38.3 hours for legal research and drafting related to motion briefing). Accordingly, the Court finds that a one-third reduction to Mr.

Filipovits's requested fees is warranted. As a result, the Court awards Mr. Filipovits $13,866.67 in fees.

Turning to Mr. Greenamyre, the Court finds that his hourly rate of $350 is not appropriate for a second-year associate. In the Court's experience, the prevailing market rate for an attorney of Mr. Greenamyre's skill and reputation would be approximately $250 per hour. Indeed, the Court finds it particularly telling that Mr. Greenamyre's more senior co-counsel Mr. Filipovits—who has over seven more years of litigation experience than Mr. Greenamyre—charges a rate of $400 per hour. Reviewing Mr. Greenamyre's time entries, the Court finds that Mr. Greenamyre's time was less efficient than that of an experienced lawyer. For example, Mr. Greenamyre billed 2.1 hours on briefing a routine motion for a discovery extension. He also billed 0.7 hours ($245 at his requested rate) for correspondence with the Court's courtroom deputy concerning that motion. His email to the Court was five sentences long and informed the Court that Defendants consented to the extension. Additionally, the time spent on briefing and researching the legal issues related to the spoliation seem excessive in the Court's judgment. Accordingly, the Court finds that a more reasonable rate for Mr. Greenamyre's services is $250 per hour. As a result, the Court awards Mr. Greenamyre $24,200 in attorney's fees.

Last, the Court finds that a slight reduction in the requested costs is warranted as well. Mr. Greenamyre's paralegal billed at a rate of $150 per hour. In the Court's experience, a more reasonable rate in Atlanta legal community is

$100 per hour. Applying that rate to the billed time of 8.5 hours, the Court reduces Mr. Greenamyre's requested paralegal costs from $1275 to $850. Combined with the other requested costs, which the Court finds reasonable, that adds up to a total of $1629.11 in costs. Altogether, the Court awards Mr. Filipovits and Mr. Greenamyre $39,695.78 in attorneys' fees and costs as set out above.[3]

## IV.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS IN PART** Plaintiff Christopher Kitcho's Motion for Partial Summary Judgment and/or Default Judgment and Spoliation Sanctions [58]. As explained, the Court finds that the appropriate sanction is for two trials to be held in this case. The Court also **ORDERS** Defendant Dean pay Plaintiff Kitcho $39,695.78 in attorneys' fees and costs incurred in direct relation to his spoliation.

Further, the parties are **ORDERED** to mediation. The parties are **ORDERED** to confer and notify the court within seven days of the date of the entry of this Order whether they are agreeing to a private mediation or a Magistrate Judge mediation. If the case does not settle at mediation, the parties are **DIRECTED** to confer and submit a proposed pre-trial order within 30 days of the date of the failed mediation.

---

[3] However, the Court notes that if Plaintiffs ultimately prevail, any attorneys' fees and costs they seek pursuant to 42 U.S.C. § 1988 may not include any fees and costs related to the spoliation motion because they are awarded in this Order.

**IT IS SO ORDERED** this 27th day of February, 2018.

**Leigh Martin May**
**United States District Judge**